MARCH 12, 1875.  CURRIER *v.* GILMAN.

*Error—Personal service of writ—Defendant absent from state.*

Where a writ was served by leaving a summons in due form at the usual place of abode of the defendant in this state, as required by Gen. Stats. ch. 204, sec. 3, but the defendant was in fact absent from the state at the time, and did not return until after judgment had been rendered against him by default in the suit thus commenced, and he had no knowledge of the proceedings—*Held*, that no personal service had been made, and that such judgment must be reversed on error.

WRIT OF ERROR, by James A. Currier against Virgil C. Gilman, dated the 7th day of May, 1874. Said Currier, by his said writ of error, seeks to reverse a judgment rendered against him in favor of said Gilman at the January term of the supreme judicial court, held at Haverhill, in the western judicial district of said county, on the 3d Tuesday of March, 1873, for three hundred and fifty-four dollars and fifty-five cents damages, and eight dollars and eighty-nine cents costs, upon default.

The said Currier assigns errors as follows, viz.,—that said suit of said Gilman against said Currier was commenced on the 4th day of February, 1873, and that judgment was rendered therein, by default, on the 11th day of April, 1873, there having been no appearance by or for said Currier in said suit; that said Gilman's writ in said suit was dated on said fourth day of February, 1873, and served by attaching property of said Currier, in said Haverhill, on the 4th and 5th of said February, and by leaving a summons in due form of law at the last and usual place of abode of said Currier, in said Haverhill, on the first day of March, 1873, and in no other way ; and no personal nor legal service was ever made on said Currier of said writ, and that at the times of

the suing out and service of said writ, and for a long time before, said Currier was absent from the state of New Hampshire, to wit, in the state of Vermont, and remained absent continually from said state of New Hampshire from the second day of February, 1873, until long after the rendition of said judgment, to wit, until the 31st day of May, 1873, and had no knowledge, suspicion, nor intimation that said suit had been commenced against him until long after the rendition of said judgment and the adjournment of said court without day, to wit, not until the 31st day of May, 1873, and long after; and said Currier says and believes that said Gilman had not, at the time of the commencement of said suit against him, and has not since had, any just cause of action against him the said Currier,—to the grievous damage of the said Currier.    And said Gilman demurs to the said assignment of errors, and sets forth the following causes of demurrer, viz.,—1. It does not appear, and it is nowhere alleged or set forth in said assignment of errors, that said James A. Currier was not an inhabitant of the state, to wit, the state of New Hampshire, at the time of the commencement of the said suit mentioned in said assignment of errors, at the time of the attachment of said Currier's property in said suit, at the time of the leaving of the summons, in due form of law, at said Currier's usual place of abode in said Haverhill, nor at the time of the rendition of said judgment.    2. It does not appear, and is nowhere alleged or set forth in said assignment of errors, that the said James A. Currier's residence, domicile, and place of abode was not in said Haverhill, in the county of Grafton in the state of New Hampshire, at the time of the commencement of said suit, at the time of the attachment of said Currier's property in said suit, at the time of leaving the summons in due form of law at his usual place of abode in said Haverhill, nor at the time of the rendition of the judgment in said suit ·mentioned in said assignment of errors.

*Felton*, for the plaintiff.

*Chapman*, for the defendant.

The question raised by the assignment of errors and the demurrer in this case is, What constitutes a complete and legal service of a writ upon a defendant whose goods or estate are attached in this state, who was an inhabitant of and had his domicile, residence, place of abode, homestead, dwelling, and family in this state, and nowhere else, at the time of the commencement of the suit, and during all the time of the pendency of all the proceedings therein, in which a judgment is rendered ?   Or, in other words, did the defendant in error comply with the requirements of the statute in respect to the service of his writ, in obtaining the judgment here sought to be reversed ?

Currier, the plaintiff here, was an inhabitant and citizen of Haverhill in this state before and at the time of the commencement of the suit *Gilman* v. *Currier*, and ever since has been, and is so set up and

described in the original writ and throughout the whole record of the case; and there is no allegation in the assignment of errors that he was not such. His home, domicile, residence, place of abode, homestead, dwelling, and family were all in said Haverhill at the time of the commencement of said suit and during all the time of the pendency thereof, and ever since have been, continually and uninterruptedly, in said Haverhill, and there is no allegation in the assignment of errors to the contrary. Sec. 3, ch. 204, Gen. Stats., provides that " when the goods or estate of any person are attached, a summons in the form prescribed shall be delivered to the defendant, or left at his abode, with the name and office of the officer serving the same indorsed by him thereon." We take it for granted that it will not be seriously contended that this section does not apply to and embrace any person whose permanent and known residence and place of abode are in this state, or an inhabitant of this state, notwithstanding it may apply to any person temporarily in this state, having his property attached in this state. The giving to Currier a summons in due form, or leaving the same at his abode in said Haverhill, was a strict compliance with the peremptory provisions of the statute to complete the service of the writ, and the service was thereby completed—*Jones* v. *Smith*, 3 N. H. 113, *Foster* v. *Hadduck*, 6 N. H. 217, *Kendrick* v. *Kimball*, 33 N. H. 482, *Bugbee* v. *Thompson*, 41 N. H. 184; and it could not have been completed legally in any other way. *Burt* v. *Stevens*, 22 N. H. 229. The service of the writ having been legally completed, " personal service " was made upon the defendant in the original suit,—just such " personal service " as the statute contemplates and requires; and hence it is unnecessary to consider sec. 3, ch. 207, Gen. Stats., commented upon by the plaintiff's counsel.

The leaving a summons at the defendant's abode in this state is just as much a " personal service " as the delivering of a summons to the defendant is, for in neither mode of service does it follow that the defendant ever gets actual knowledge of the document. It is enough that by either mode the service and notice contemplated and required by the statute is made and given, and the means of obtaining actual knowledge of the suit is given to the defendant.

LADD, J. The demurrer, like a plea of *in nullo est erratum*, admits all the facts well alleged in the assignment of errors. For the purpose of this decision, therefore, it is to be taken that, at the time the action of *Gilman* v. *Currier* was commenced, and from that time until after the rendition of judgment therein against the defendant by default, Currier was absent from the state and had no knowledge of the suit. It is also to be taken that his place of abode, that is, his dwelling-place or domicile, was in Haverhill in this state, and that a summons in due form of law was left there by the officer after his estate had been attached, as required by sec. 3, ch. 204, Gen. Stats.

By Gen. Stats., ch. 207, sec. 3, it is provided that " when no personal service has been made on the defendant in any action which may

be entered without such service, the court, on suggestion thereof, may order the action to be continued, and notice to be given of the pendency thereof by publishing the order," &c.; and the question is, whether the leaving of a summons at the abode of the defendant, under the circumstances here shown, constitutes a personal service of the writ within the meaning of this statute.

The position of the defendant in error is, that when he caused service of his writ to be made in the exact mode prescribed by law, that is, by leaving a summons in due form at the abode of the defendant in this state, it must be held that a full and perfect service was made, sufficient to give the court jurisdiction of the person of the defendant as well as of the property attached. This claim certainly appears, at first, plausible, to say the least; but I am satisfied upon examination that it cannot be sustained.

A brief review of our legislation on this subject will aid us in coming to a right result. It is to be observed, in the first place, that the provision with respect to the leaving of a summons at the abode or dwelling-house of the defendant, in case his goods or estate are attached, has existed without any substantial change,* at least since the passage of the "act regulating process and trial of civil causes," February 9, 1791; Laws of 1792, p. 88; id. 1797, p. 88; id. 1805, p. 88; id. 1815, p. 108, sec. 8; id. 1830, p. 91, sec. 11; Rev. Stats., ch. 183, sec. 3; Comp. Stats., p. 466, sec. 3; Gen. Stats., ch. 204, sec. 3. The changes, so far as regards the matter now under consideration, have been merely verbal. It will also be observed that, during this whole period, down to the enactment of the General Statutes which went into effect January 1, 1868, there has existed, alongside this provision for leaving a summons at the dwelling-house of the defendant, another express provision, prescribing in clear and explicit terms the mode to be pursued as to notice when "the person against whom any suit is brought shall be absent from this state at the time of commencing such

---

* The act of May 2, 1719, was as follows:

"An Act providing that in Suits where Goods or other Estate is attached, the Defendant be summoned.

"To *the intent that all persons may have due notice to prepare and make their defence in every act and suit commenced against them;*

"§ 1. BE IT ENACTED *by* HIS EXCELLENCY *the* GOVERNOR, COUNCIL, *and* REPRESENTATIVES, *in* GENERAL ASSEMBLY *convened, and by the* AUTHORITY *of the same,* That when the goods or estate of any person shall be attached at the suit of another in any civil action, a summons in form of law as is prescribed, shall be delivered to the party whose goods or estate are attached, or left at his or her dwelling-house, or place of last and usual abode, fifteen days before the day of the sitting of the court where such attachment is returnable; and in case the defendant was at no time an inhabitant or sojourner within this province, then such summons to be left with his or her tenant, agent, or attorney, and the serving of it to be certified by a sworn officer that executed the attachment, or by affidavit made in court by the person that delivered the same, and by one other credible witness then also present, otherwise the writ shall abate."

REPORTER.

suit, and shall not have returned at the time appointed for trial." *
Laws 1792, p. 93; *id.* 1797, p. 92; *id.* 1805, p. 92; *id.* 1815, p. 104,
sec. 17; *id.* 1830, p. 92, sec. 13; Rev. Stats., ch. 186, sec. 5; Comp.
Stats., p. 480, sec. 5.

To show the extreme jealousy with which the legislature have guarded
the rights and interests of a defendant thus absent from the state, and
the reluctance with which they have permitted a judgment to be
entered up against him when he has had no actual notice of the suit, I
will quote the act of 1791 on this point, entire. " When a suit shall
be brought against a person who is not an inhabitant or resident in
this state, and no personal service be made on the defendant, or when
the person against whom any suit is brought shall be absent from this
state at the time of commencing such suit, and shall not have returned
at the time appointed for trial, the justices of the court before whom
such suit is shall continue the action to the next term, and if the de-
fendant doth not appear at the next term by himself or attorney, the
court shall further continue the action to the next term, unless the
plaintiff shall produce evidence sufficient to satisfy the court that the
defendant hath had notice of the suit or process a sufficient time, before
such term, to have appeared at said court; and in all such cases,
where judgment is entered up by default, after two continuances as
aforesaid, and no notice proved as aforesaid, the proof of which notice
shall always be in writing and filed in the cause, execution or writ of
seizin shall not issue until the plaintiff or demandant shall have given
bond with sufficient surety, in double the value of the estate or sum
recovered by such judgment, to respond the judgment that may be ren-
dered on action of review brought to reverse such original judgment,
which action may be brought by the defendant at any time within one

---

* Sec. 2 of the act of May 2, 1719, provided:

"AND *further* IT IS ENACTED *by the* AUTHORITY *aforesaid,* That when it happens
the party against whom suit is brought, not to be an inhabitant or sojourner with-
in this province, or to be absent out of the same at the time of commencing such
suit, and shall not return before the time for trial, the justices of such court where
the suit is brought shall continue the action to the next court, and if the defendant
doth not then appear, by himself or attorney, and be so remote that the notice of
such suit depending could not probably be conveyed to him during the vacancy, the
justices at such next court may further continue the action to the court then next fol-
lowing, and no longer: And in such cases where judgment is entered up by default,
after two continuances as aforesaid, execution or writ of seizin shall be stayed, and
not issue forth until the plaintiff or demandant shall have given bond, with one or
more sufficient sureties, in double the value of the estate, or sum recovered by such
judgment, to make restitution, and refund and pay back such sum as shall be given
in debt or damage, or so much as shall be recovered upon a suit therefor to be
bro't within twelve months next after entering up the first judgment; if upon such
suit the judgment shall be reversed, annulled, or altered, the security aforesaid
to be no further answerable than for the recovery that shall be made upon such
suit, to be made within twelve months as aforesaid.

" *Provided,* That no real estate taken in execution granted upon such first judg-
ment shall be alienated or past away, until after the expiration of the said twelve
months, or after a new trial brought within the said space of twelve months, to the
intent that restitution thereof may be made in case as aforesaid."

REPORTER.

year next after the rendering such original judgment, and such plaintiff in review may have the benefit of all pleas and advantages that he might have had, had he appeared and pleaded to the original suit, the default notwithstanding. *Provided always*, that if the plaintiff in such original suit shall consent to have the action continued from term to term, six terms from the commencement of the suit, without any costs after the second term except for the court or clerk's fees, he shall not be obliged to give such bond, and the defendant shall not be entitled to any review."

This act remained in force without alteration from the time of its passage to the adoption of the Revised Statutes, a period of more than half a century. The change made in the Revised Statutes was the substitution of an order of notice to be published in some newspaper in place of the continuances, &c., of the earlier act. This provision of the Revised Statutes remained in force at least from 1842 till 1868, another period of over a quarter of a century, without change.

I have traced the coëxistence of these two statutes, namely, the one with respect to leaving a summons at the dwelling-house, and the other prescribing the mode of procedure when the defendant is absent from the state and does not return before trial, to show that for a period of seventy-eight years immediately preceding the enactment of the General Statues it must have been the understanding, not only of the legislature, but of the people and courts of the state, that leaving a summons at the dwelling-house of a defendant who was at the time absent from the state, and who has not returned at the time appointed for trial, did not constitute personal service of a writ; for if it did, it was idle and absurd in the extreme, as well as a great hardship and wrong to the plaintiff, to force him to incur so much inconvenience, expense, and delay in obtaining a judgment in such case.

Look at the section as it stands in the Revised Statutes and in the Compiled Statutes : "In any action commenced against any defendant who is not an inhabitant of this state, or whose residence is unknown to the officer serving the writ, and the goods and estate of the defendant within this state shall be attached, or when the defendant shall be absent from the state at the time of commencing such action, and shall not have returned at the time appointed for trial, and no personal service is made on the defendant, the court on suggestion thereof may order the action to be continued, and notice to be given of the pendency thereof by publishing," &c.

In the General Statutes this section is much condensed. The specific enumeration of cases where no personal service has been made is wholly dropped, and the general phrase, " where no personal service has been made on the defendant," substituted in its place; and the question is, whether by this change the legislature intended to repeal the law as it had always before existed in favor of defendants absent from the state at the time of the commencement of the suit, &c.

In determining the legislative intent in this particular, we may properly consider the subject-matter to which the act relates; and if the

interpretation were doubtful, the court should adopt that which accords with the principles of the common law and with right, rather than that which leads to manifest absurdity and injustice. It is a doctrine of the law, founded upon very fundamental principles of justice and equity, that a judgment ought not to pass against any man in any proceeding without notice, and an opportunity to show cause against it. In the absence of plain and unmistakable words to that effect, it is not to be presumed that the legislature in the present case intended to overturn a rule so salutary, fortified, as it was, by a practice as old as the common law, and guarded by statutes which had been reënacted from time to time by six or eight different legislatures between the adoption of the constitution and the present time. If any inferences are to be drawn, they must be in the other direction.

But it appears that the leaving of a summons at the abode of a defendant absent from the state, who has not returned at the time appointed for trial, has never heretofore been considered personal service. The legislature which enacted the General Statutes, entertaining the same view as all their predecessors on this subject, substituted the phrase " when no personal service has been made," in place of the detailed enumeration of cases where no such service was made; and I cannot think they intended anything more than to abridge the phraseology of the act by striking out a useless verbiage with which up to that time it had been distended.

If we were able to doubt that this construction gives effect to the actual purpose and intention of the legislature in passing the act in question, we are happily relieved of all apprehension on that point by a reference to the report of the General Statutes commissioners. In that report the commissioners say,—" To enable the legislature more readily to comprehend the alterations made in the existing laws by their report, the commissioners have added to the references to the old statutes, under the marginal abstract of each section, a letter or letters pointing out the nature of the change made, as follows: where the change is merely verbal, ' v,' " etc. The section under consideration was enacted by the legislature precisely as reported; and under the marginal abstract we find a reference to " R. S. 186, 5; C. S. 198, 5," and the letter " v," signifying that the change was merely verbal.

This settles the question of actual intent on the part of the legislature, while it, at the same time, gives us a most unequivocal and decided expression of the opinion of the commissioners, to the effect that leaving a summons at the abode of a defendant who is absent from the state at the time, and who shall not have returned at the time appointed for trial, does not constitute personal service of the writ. It is needless to say that the well known character of those eminent gentlemen, all learned lawyers, and all specially qualified to judge in a matter of this sort by a long judicial experience on the bench of the highest court in the state, gives to their opinion a weight of authority which we should hesitate to disregard, even were the matter otherwise in doubt.

It cannot be supposed for a moment that a judgment obtained in the way this is admitted by the demurrer to have been obtained, would be allowed to stand, if any power exists in the court to give the defendant an opportunity to try his case.   There is, therefore, no inconsistency or hardship in holding that there was error in its rendition.   I am of opinion that there was error, and that the demurrer must be overruled. By the agreement of the parties, the defendant in error is to have leave to withdraw the demurrer and answer further.

CUSHING, C. J., concurred.

SMITH, J.   My brother LADD has shown that, from 1791 down to 1868, by the statutes of this state, judgment could not be rendered against a defendant who might be absent from the state at the time of the commencement of the action, and who had not returned at the time appointed for trial, where no personal service had been made upon him, without complying with the requirements of the statute providing for actual notice, or what the statute regarded as equivalent to actual notice, to the defendant.   The provisions of the General Statutes, although expressed in different language from that used in previous statutes, were evidently not designed to overturn the rule which had been in force in this state for so many years, and which is founded upon such strong grounds of justice and equity.   It appears by the report of the commissioners to codify the laws, that they intended to make no change in the statutes in this respect; and the fact that their language was adopted by the legislature without change, leaves no room to doubt what the legislative intent was.   The statute then being unchanged in this particular, and no actual notice of the original suit of *Currier* v. *Gilman* having been given to Currier, it follows that the judgment rendered against him is erroneous, and should be reversed.

*Demurrer overruled.*